IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LANCE PUIG and** | § | |
| **EDITH EKLUND PUIG,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-0270-L** |
| | § | |
| **CITIBANK, N.A.,** as Trustee for | § | |
| WAMU Series 200HE-2 Trust, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed December 16, 2011. After carefully considering the motion, response, replies, appendices, supplemental brief, and applicable law, the court **grants** Defendant's Motion for Summary Judgment.

### I.    Factual and Procedural Background

On January 13, 2011, Lance Puig and Edith Eklund Puig (collectively, the "Puigs" or "Plaintiffs") originally filed this action against Citibank, N.A., as Trustee for WAMU Series 200HE-2 Trust ("Citibank" or "Defendant") in the 134th Judicial District Court of Dallas County, Texas. This action was removed to this court on February 11, 2011, based on diversity jurisdiction. The Puigs filed Plaintiffs' First Amended Original Complaint on March 9, 2011, and pursuant to this court's order of February 23, 2012, filed Plaintiffs' Second Amended Complaint on February 28, 2012. Plaintiffs' Second Amended Complaint is the live pleading in this case; however, the court refers to Plaintiffs' First Amended Original Complaint with respect to the issues of notice and cure of alleged constitutional violations, as discussed more fully below.

Plaintiffs seek to enjoin permanently Defendant from foreclosing on the residential property where they currently reside and to invalidate the deed of trust lien thereon. Plaintiffs contend that Citibank is not the holder of the note evidencing their home-equity loan and that the originator of their home-equity loan violated the Texas constitutional provisions regarding home-equity loans.

On or about December 15, 2003, Plaintiff Lance Puig ("Mr. Puig") purchased the real property located at 10810 Bushire Drive, Dallas, Texas (the "Property") from WM Specialty Mortgage, LLC for an amount at "the higher end of [$200,000]" with a high-interest loan from a private lender typically referred to as a hard-money lender. On September 30, 2004, Mr. Puig obtained a home-equity loan for approximately $400,000, part of which was used to satisfy his purchase-money loan from the hard-money lender. On January 22, 2007, Mr. Puig refinanced his 2004 home-equity loan by obtaining a new home-equity loan from Washington Mutual Bank in the amount of $720,000. Of the $720,000 original principal balance, $295,079 was paid out to Mr. Puig in cash.

The Washington Mutual Bank ("WaMu") home-equity loan was evidenced by a Texas Home Equity Adjustable Rate Note (the "Note") executed by Mr. Puig who was the sole owner of the Property and the sole borrower on the loan. At the time of the closing of his second home-equity loan, Mr. Puig was married to Edith Puig ("Mrs. Puig"). Contemporaneously with executing the Note, the Puigs executed a Texas Home Equity Security Instrument (the "Deed of Trust"), which encumbered the Property with a deed-of-trust lien.

At some point, Mr. Puig was notified that instead of sending monthly payments to WaMu, his payments were to be made to Chase. No one else has ever tried to collect money on the loan or purported to be the holder of the Note.

**Memorandum Opinion and Order – Page 2**

In the early part of 2009, Mr. Puig stopped making payments on the loan, and he has not made a payment on the loan in more than three years.  The Puigs still reside in the home today.

On September 25, 2008, WaMu was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver.  The FDIC and JP Morgan Chase Bank, N.A. ("JPMC") then entered into a Purchase and Assumption Agreement under which JPMC acquired WaMu's loans and loan commitments.  On May 5, 2009, an Assignment of Lien ("Assignment") was executed by an Agent of JPMC, as purchaser of loans and other assets of WaMu from the FDIC, and he recorded the Assignment in the real property records of Dallas County, Texas.  The Assignment stated that JPMC assigned the Note and Deed of Trust to Citibank.  Chase Home Finance, LLC serviced Mr. Puig's loan on Citibank's behalf.

## II.   Legal Standard for Motion for Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## III.    Analysis

### A.  Plaintiffs' Request for Declaratory Relief Regarding Defendant's Standing to Enforce the Deed of Trust

Plaintiffs' lawsuit seeks a declaration that the "Assignment is invalid because the person who executed the Assignment lacked standing and authority, and because the Defendant is not in

actual possession of the original Note and is not a lawful holder in due course, and that Defendant Lacks standing to enforce the Note and Home Equity Security Instrument . . . ." Pls.' Second Am. Compl. ¶ 7.3. Defendant argues that Plaintiffs have not offered any evidence showing they are entitled to this relief and have thus failed to establish a justiciable controversy. Defendant also argues that Plaintiffs have failed to raise any question that Citibank is not the owner or holder of the Note.

### 1. Justiciable Controversy

Plaintiffs request relief pursuant to the Texas Declaratory Judgment Act. In the Fifth Circuit, however, "district courts cannot award relief pursuant to the Texas Declaratory Judgment Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules." *Falk v. Wells Fargo Bank*, 2011 WL 3702666, *4 (N.D. Tex. Aug. 19, 2011) (citing *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)) (internal quotation marks omitted). As Defendant's Motion for Summary Judgment addresses the applicability of both the Texas and Federal Declaratory Judgment Acts in light of the facts and circumstances of this case, it suffers no legal prejudice by the court's consideration of the Federal Declaratory Judgment Act. Accordingly, the court will analyze Plaintiffs' claims under the Federal Declaratory Judgment Act.

The Declaratory Judgment Act, 28 U.S.C.S. § 2201(a), requires an "actual controversy" between the parties to the declaratory judgment action. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). "The declaratory judgment plaintiff must establish that this requirement was satisfied at the time the complaint was filed—post-filing conduct is not relevant." *Id.* (citation omitted). "The Supreme Court directs that a dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive

character." *Id.* (citations omitted). "Declaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts." *Id.* (citation omitted). "At the same time, however, declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Id.* (citation omitted).

Citibank argues that when no entity other than the declaratory judgment defendant is claiming to be entitled to enforce a note, there is no justiciable controversy. Defendant cites *Val-Com Acquisitions Trust v. Wells Fargo Bank, N.A.*, 428 F. App'x 313 (5th Cir. 2011), for this proposition. In *Val-Com*, Val-Com Acquisitions, the purchaser of property from borrowers who defaulted on their mortgage loans, asserted declaratory judgment claims challenging the lenders' authority to enforce the deeds of trust at issue. The trial court found that there was no justiciable controversy and granted summary judgment because the plaintiff failed to allege facts that would lead to the conclusion that a controversy existed between it and the defendants. The Fifth Circuit affirmed, stating:

> [The defendants] offered proof of their relationship to the properties and transactions in question. In response, [the plaintiff] simply attached unauthenticated unclear documents that do not refute [the defendants'] status. [The plaintiff] offered no competent summary judgment proof that [the defendants] are not who they say they are nor do they offer any argument in this court to support such a conclusion.

*Val-Com v. Wells Fargo*, 428 F. App'x at 315. Citibank also relies on *Val-Com Acquisitions Trust v. Chase Home Finance, L.L.C.*, 420 F. App'x 405, 406 (5th Cir. 2011); *Val-Com Acquisitions Trust v. Chase Home Finance, L.L.C.*, 425 F. App'x 284, 285 (5th Cir. 2011); and *Val-Com Acquisitions Trust v. Bank of America, N.A.*, 436 F. App'x 302, 303 (5th Cir. 2011). In each of these cases, the Fifth Circuit affirmed Rule 12(b) dismissals in declaratory judgment cases regarding whether an entity was authorized to enforce a mortgage loan though foreclosure and finding that the plaintiffs failed to advance a controversy because "[t]hey allege no facts

whatsoever casting doubt on [the defendant's] status as assignee of the relevant documents. They simply asked for 'a determination and declaration of whether [the defendant] is the owner and/or holder of the Note and Deed of Trust . . . . '"  420 F. App'x at 406;  425 F. App'x at 285; 436 F. App'x at 303.   Thus, in the summary judgment context, the rule is that no justiciable controversy exists when the plaintiffs have offered no competent summary judgment proof that the defendant is not the assignee of the note or deed of trust.   The court now turns to whether Plaintiffs have offered such proof.

## 2.   Whether Citibank is Entitled to Enforce the Deed of Trust

Citibank argues that its summary judgment evidence establishes that it is the assignee and holder of the loan.   Plaintiffs raise a number of theories of recovery, many of which are premised on the same basic factual question: whether Defendant is a mortgagee or mortgage servicer with the power to foreclose on Plaintiffs' Property.   Specifically, Plaintiffs contend that recording the assignment is not in and of itself competent summary judgment evidence that eliminates any genuine dispute of material fact concerning whether the Defendant is the actual owner and holder of the Note.   Pls.' Response 7.   Plaintiffs argue that Defendant's predecessor bifurcated the Note and Deed of Trust.   Response 8-10.   Plaintiffs also argue that there is no proof, or at least a genuine dispute of material fact has been established, that their loan was actually assigned to Defendant, because the Note copy attached to Defendant's motion for summary judgment has no endorsements to evidence its alleged endorsement from the original lender, WaMu, to Defendant. Pls.' Response 10.   Plaintiffs also state that there is no proof offered by Defendant of the alleged Purchase and Assumption Agreement between the FDIC and JPMC or the alleged trust agreement for which Defendant is purportedly acting as trustee.   Pls.' Response 10.

Plaintiffs further state that there is no proof that the person who purportedly executed the Assignment, Eric Tate, had actually been vested with lawful authority to assign their loan.

Plaintiffs raise the legal theory colloquially known as the "show-me-the-note" theory. This theory supposes that "that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loans Servicing, L.P.* 2011 WL 2163987, * 2 (W.D. Tex. April 26, 2011) (citations and internal quotation marks omitted). Courts in this and neighboring districts have "roundly rejected this theory . . . because foreclosure statutes simply do not require possession or production of the original note." *Id.* (citations omitted). Plaintiffs conflate the two separate notions of enforcement of a promissory note and foreclosure. Texas law differentiates between the two. "Foreclosure enforces the deed of trust, not the underlying note and is an independent action against the collateral and may be conducted without judicial supervision. In contrast, enforcement of the note is a personal action and requires a judicial proceeding." *Millet v. JP Morgan Chase, N.A.*, 2012 WL 1029497, * 2 (W.D. Tex. Mar. 26, 2012) (brackets, ellipses, internal quotes and citations omitted). "Thus, the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are *severable*." *Id* at *3 (citing *Claud v. Gray*, 81 S.W.2d 647 (1935) (emphasis added)). "In cases where a note holder seeks a judgment against the borrower, the holder must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument. Requiring the note holder to prove possession of the *original* note prevents multiple entities from attempting to collect on it." *Id.* (citations omitted). "In contrast, courts have held that the Texas Property Code does not require a mortgagee in a non-judicial foreclosure action to produce the original promissory note as a prerequisite to foreclosure." *Id.* (citing *Wells v. BAC Home Loans Servicing, L.P.* 2011 WL 2163987). Courts have noted that

Section 51.002 of the [Texas Property] Code, which lays out the steps that must be taken in order to foreclose on property, does not include a provision requiring a mortgagee to produce the original promissory note." *Id.* (citations omitted).

The procedural steps outlined in the Texas Property Code suggest that "whatever entity qualifies as a 'mortgagee' either owns the note or is serving as an agent for the owner or holder of the note; and, the statute assumes that when a foreclosure is conducted by someone other than the owner or holder of the note, the person conducting the foreclosure will be acting as agent or nominee for the owner or holder." *Millet*, 2012 WL 1029497, at * 3 (citing *McCarthy v. Bank of America, NA*, 2011 WL 6754064 (N.D. Tex. Dec. 22, 2011)).   Under Texas law, the assignee of a note and deed may institute nonjudicial foreclosure proceedings.   *See* Tex. Prop. Code § 51.0001(4).   Thus, "even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment provided he can establish chain of title." *Falk v. Wells Fargo Bank*, 2011 WL 3702666, at *6 (quoting *Leavings v. Mills*, 175 S.W.3d 301, 309–10 (Tex. App—Houston [1st Dist.] 2004, no pet.)).   The *Leavings* court explained how a party establishes that it is the owner of an instrument:

> A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. An issue of material fact on the issue of ownership is presented when there is an unexplained gap in the chain of title.

*Leavings*, 175 S.W.3d at 309 (citations omitted).

Citibank provided evidence that the loan was originated by WaMu, and the loan was transferred to JPMC through the FDIC in September 2008 when WaMu was in receivership. Specifically, Citibank submitted an Affidavit of the FDIC.   Therein, Robert C. Schoppe, as "Receiver in Charge for FDIC as Receiver of Washington Mutual Bank" stated:

4.     Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC as receiver of Washington Mutual and JPMorgan Chase Bank, National Association ("JPMorgan Chase"), dated September 25, 2008 (the "Purchase and Assumption Agreement'[']), JPMorgan Chase acquired certain of the assets, including all loans and all loan commitments, of Washington Mutual.

5.     As a result, on September 25, 2008, JPMorgan Chase became the owner of the loans and loan commitments of Washington Mutual by operation of law.

Def.'s S.J. Evid_000088.   Accordingly, Defendant has established the chain of title of the promissory note from WaMu to JPMC.   Citibank provided evidence that on July 6, 2009, an Assignment of Lien, stating that it assigns and transfers the "note, together with all liens" from JPMC to Citibank was recorded in the real property records of Dallas County, Texas. Specifically, the Assignment of Lien produced by Defendant states, in material part:

> [T]he undersigned, **JPMorgan Chase Bank, National Association, as purchaser of the loans and other assets of Washington Mutual Bank**, formerly known as Washington Mutual Bank, FA (the Savings Bank) from the Federal Deposit Insurance Corporation, acting as receiver for the Savings Bank and pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821 (d), the present legal and equitable holder of that one certain promissory note in the original principal sum of $720,000.00, dated January 22, 2007, executed by Lance Puig, payable to the order of Washington Mutual Bank, more fully described in a Deed of Trust of even date, to Allan Polunsky, Trustee, duly recorded under Dallas County Property Records, Instrument Number: 20070038099, said note being secured by said Deed of Trust lien against the following described property . . . .

> for good and valuable consideration paid to the undersigned, the receipt and sufficiency of which is hereby acknowledged, has TRANSFERRED and ASSIGNED, GRANTED and CONVEYED and by these presents TRANSFERS, ASSIGNS, GRANTS and CONVEYS unto **Citibank, NA** as trustee for WaMu Series 2007-HE2 Trust, **the above described note, together with all liens, and any superior title, held by the undersigned securing payment thereof**.

Def.'s SJ Evid_000091 (emphasis added).   Accordingly, Defendant has established the chain of title of the promissory note from JPMC to Citibank.

Defendants have also provided evidence that Plaintiffs have continuously acted as if Citibank is the holder of the Note.  The evidence shows that when Plaintiffs filed bankruptcy in in 2012, they entered into an Agreed Order Granting Relief from the Automatic Stay that permitted JPMC, as Agent for Citibank, to foreclose on the Deed of Trust.   Def.'s SJEvid_000094-96.   Defendant has also provided evidence that when Mr. Puig was asked whether he has any doubt as to the validity of the Assignment of Lien, Mr. Puig stated, "Yes. But I don't remember what it was right offhand."   Def.'s SJEvid_000034.   When asked again why he questioned the validity of the recorded Assignment, Mr. Puig responded, "I don't remember" and then admitted that no one other than WaMu or Chase ever attempted to collect payments on the Note and no one other than Citibank ever told him it was the holder of the Note. *Id.*

Plaintiffs have only presented legal theories and have not presented evidence demonstrating that the Note and Deed of Trust have been bifurcated or that Defendant is not the actual owner of the Note.   Plaintiffs argue that the Note has no endorsements to evidence a transfer of ownership from the original lender; however, the court has previously explained that "even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment."  *Leavings*, 175 S.W.3d at 309.  Contrary to Plaintiffs' assertions, Defendant has offered evidence of the Purchase and Assumption Agreement between the FDIC and JPMC and the assignment of the Note from JPMC to Citibank.  Defendant has satisfactorily demonstrated the chain in title of the Note.  Plaintiffs argue that there is no proof that the person who purportedly executed the Assignment, Eric Tate, had actually been vested

with lawful authority to assign Plaintiffs' Loan.  Plaintiffs have offered no proof demonstrating that Eric Tate lacked the lawful authority to assign their loan.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason*, 73 F.3d at 1325.  As previously established, no justiciable controversy exists when the plaintiffs have offered no competent summary judgment proof that the defendant is not the assignee of the note or deed of trust.  Plaintiffs have failed to meet their burden and offer evidence that Defendant is not the assignee of the Note or Deed of Trust.  Finding no unexplained gap in the chain of title, the court determines no genuine disputes of material fact exist as to Defendant's ownership of the Note; that no justiciable controversy exists as to Plaintiffs' request for declaratory relief regarding Defendant's standing to enforce the Deed of Trust; and Defendant is entitled to summary judgment on Plaintiffs claims as to Defendant's standing to enforce the Deed of Trust.

### B. Plaintiffs' Request for Declaratory Relief Regarding Alleged Violations of the Texas Constitution

Defendant moves for summary judgment on Plaintiffs' claim regarding alleged violations of the Texas Constitution.  The Puigs contend in Plaintiffs' First Amended Original Complaint[*] that the Texas Constitution's home-equity loan provisions were violated in the following ways: (1) Edith Puig did not sign the closing documents (¶¶ 16, 36(a)); (2) there was no three-day waiting period to fund the loan (¶ 36(b)); (3) the loan was closed less than twelve calendar days

---

[*] Defendant contends that it was not placed on notice of any failure to comply with the Texas Constitution that would trigger its obligation to cure the alleged violations.  Defendant further contends that if Plaintiffs' First Amended Original Complaint is considered to be notice, only certain violations were therein alleged.  Thus, the court will first address the violations alleged in Plaintiffs' First Amended Original Complaint.

after Plaintiffs' loan application was received (¶ 36(c)); (4) the loan was closed less than one business day after Plaintiffs' loan application was received (¶ 36(c)).  The court now turns to whether Defendant violated the specified provisions of the Texas Constitution.

### 1.  Signing of the Closing Documents

Plaintiffs contend that WaMu violated the Texas Constitution because Edith Puig did not sign all closing documents.  Article XVI, § 50(a)(6)(A) of the Texas Constitution requires that a lien on a homestead be voluntary.  This section states:

> § 50. (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . . (6) an extension of credit that: . . . (A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse.

Tex. Const. art. XVI, § 50(a)(6)(A).  "In connection with certain amendments to the home equity lending provisions in the Texas Constitution in 2003, the Texas legislature revised Chapter 11 of the Texas Finance Code to allow the Texas Finance Commission to promulgate interpretative regulations of the home equity loan provisions."  *Chambers v. First United Bank & Trust Co.* (*In re Chambers*), 419 B.R. 652, 671 (Bankr. E.D. Tex. 2009) (citing Tex. Fin. Code Ann. § 11.308).  "With respect to § 50(a)(6)(A), the Texas Finance Commission has interpreted this provision to require that the lender obtain the consent of each owner and each owner's spouse."  *Id.* (citing 7 Tex. Admin. Code § 153.2 (effective January 8, 2004)).

Lance Puig is the sole owner of the Property and borrower on the note.  Accordingly, the constitutional requirement is satisfied when Mr. Puig (owner) and Mrs. Puig (owner's spouse who is not a maker of the note) signs the deed of trust.  *See* 7 Tex. Admin. Code § 153.2 ("The consent of each owner and each owner's spouse must be obtained . . . . An owner or an owner's spouse who is not a maker of the note may consent to the lien by signing a written consent to the

mortgage instrument.)  Edith Puig does not dispute that she signed the Deed of Trust creating a

lien on the Property that is security for the amount of the loan.  Def.'s SJEvid_000068-

SJEvid000077; SJEvid0000101.  Mrs. Puig concedes in her deposition testimony that she signed

the Deed of Trust.  Def.'s SJEvid0000101.  Mrs. Puig, however, contends that the name

"Eklund" that appears above her signature is not her handwriting and implies that it was inserted

by someone else.  *Id.*  This implication, however, does not change that Mrs. Puig signed the

document.  Plaintiffs do not provide any authority suggesting that the alleged insertion of the

name "Eklund" on the Deed of Trust affects the validity of the document.  Accordingly, the court

determines that the constitutional requirement of section 50(a)(6)(A) was met; no genuine

dispute of material fact exists as to this claim; and Defendant is entitled to judgment as a matter

of law as to this claim.

### 2.  Three-Day Waiting Period to Fund the Loan

Plaintiffs contend that WaMu violated the Texas Constitution because it failed to wait

three days to fund Plaintiffs' loan.  Defendant contends that the Texas Constitution does not

require a lender to wait until three days after the home-equity loan closing to fund the loan; it

requires that home-equity lenders allow the owner of the homestead and any spouse of the owner

three days to rescind the transaction.  This applicable section states:

> § 50. (a) The homestead of a family, or of a single adult person, shall be, and is
> hereby protected from forced sale, for the payment of all debts except for: . . . (6)
> an extension of credit that: . . . (Q) is made on the condition that: . . . (viii) the
> owner of the homestead and any spouse of the owner may, within three days after
> the extension of credit is made, rescind the extension of credit without penalty or
> charge.

Tex. Const. art. XVI, § 50(a)(6)(Q)(viii).  Plaintiffs do not allege that Defendant violated the

rescission requirement.  The summary judgment evidence demonstrates that Plaintiffs signed a

Confirmation of Election Not to Rescind or Cancel Transaction on January 26, 2007, more than

three days after the loan closed on January 22, 2007.  Def.'s SJ Evid_000023; 000107.  Plaintiffs

dispute the dates of many of the closing documents, alleging they were either forged or required

to backdated by the Plaintiffs.   The Confirmation of Election Not to Rescind or Cancel

Transaction, which references Loan No 0729977256 and Borrower Lance Puig, states:

> Whereas *more than three business days have elapsed since the undersigned received the foregoing NOTICE OF RIGHT TO CANCEL* and the Truth in Lending Disclosure Statement concerning this transaction; in order to induce the Lender to proceed with full performance under the agreement in question, the undersigned do herewith warrant, *covenant and certify that they, jointly and separately, have not exercised their right to rescind; that they do not wish to and will not rescind said transaction; and that they do hereby ratify and confirm the same in all respects*.  They further represent that the undersigned are the only persons entitled to rescind, in that they are all of the persons who have an ownership interest and will occupy the real property securing this transaction.

Def.'s SJ Evid_000107 (emphasis added).   Thus Plaintiffs, by their signatures, confirmed that

more than three business days elapsed since receiving notification of the right to cancel and

waived their right to rescind the transaction.   Moreover, the summary judgment evidence

presented by Defendant, Mr. Puig's deposition testimony, shows that Plaintiffs never elected to

cancel the transaction and had no desire to cancel the transaction.  Def.'s SJ Evid_00024.

Defendant argues that, assuming that an alleged failure to wait three days to fund the loan

was a violation of the Texas Constitution, the summary judgment evidence demonstrates that

three days elapsed between the day Plaintiffs' loan closed and the day Plaintiffs' loan was

funded.  The summary judgment evidence demonstrates that Plaintiffs' loan closed on January

22, 2007. Def.'s SJ Evid_00060-61; Def.'s SJ Evid_00014-15.   The loan was not charged

interest until January 26, 2007, indicating the loan was funded on January 26, 2007.  Def.'s SJ

Evid_00060-61.  Plaintiffs have not provided evidence that the loan was funded at an earlier

date.   Accordingly, the court determines that the constitutional requirement of section

50(a)(6)(Q)(viii) was met; no genuine dispute of material fact exists as to this claim; and Defendant is entitled to judgment as a matter of law as to this claim.

### 3.   Copy of the Notice Concerning Extensions of Credit More than 12 Days before Closing

Pursuant to section 50(a)(6)(M), a homestead is protected from forced sale by ensuring a "12-day cooling off period" before a home equity loan can be closed.  Specifically, the section states:

> Sec. 50. (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . . (6) an extension of credit that: . . . (M) is closed not before: (i) the 12th day after the later of the date that the owner of the homestead submits an application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section….

Tex. Const. art. XVI, § 50(a)(6)(M)(i); *See* 7 Tex. Admin. Code § 153.12 ("An equity loan may not be closed before the 12th calendar day after the later of the date that the owner submits an application for the loan to the lender or the date that the lender provides the owner a copy of the required consumer disclosure.")   Further, section 50(g) provides: "An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument."  *See* 7 Tex. Admin. Code § 153.51 ("An equity loan may not be closed before the 12th day after the lender provides the owner with the consumer disclosure on a separate instrument.")

Defendant provided evidence, Mr. Puig's deposition testimony, in which Mr. Puig stated he did not know when he received the Notice Concerning Extensions of Credit.   Def.'s SJ Evid_00024-25.    The document reflects that it was signed and dated by Mr. Puig on December 25, 2006.  Def.'s SJ Evid_000108.  Mr. Puig admitted that he signed and dated the document.

Def.'s SJ Evid_00024-27.  Mr. Puig, however, was unsure whether he was required to backdate the document.  *Id.*  Mr. Puig then stated that he "presumably" signed the document on the 25th because the document evinces his signature and handwriting with date December 25, 2006.  *Id.* 26-27.  Plaintiffs produced evidence that Mr. Puig later stated in his deposition testimony that he did not sign the form on Christmas Day, December 25, 2006; that he does not believe that was the date it was actually signed; that he believes someone else put the date on there; and that he does not think the date is his handwriting.  Pl.s.'s App. Exh. I at 147-48.

At loan closing in 2007, Mr. Puig signed two affidavits acknowledging his receipt of the required notices.  Def.'s SJ Evid_00080; Def.'s SJ Evid_00085.  The relevant portion of the Texas Home Equity Affidavit and Agreement signed by the Puigs states:

> **J.** The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

Def.'s SJ Evid_00080.  The relevant portion of the Affidavit of Facts and Receipt of Documents signed by the Puigs states: "More than twelve (12) days have elapsed since (i) we submitted our Loan Application to Lender for this Loan, and (ii) the date Lender provided us with the Notice of Extension of Credit." Def.'s SJ Evid_00085

In an arms-length transaction, a party "is charged with the obligation of reading what he signs and, failing that, may not thereafter, without a showing of trickery or artifice, avoid the instrument on the ground that he did not know what he was signing." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).  Absent trickery, Mr. Puig is presumed to know what he signed. Plaintiffs aver that Defendant committed fraud because sometime after Edith Puig executed the closing documents, someone added her middle name "Eklund" to every document that she

signed, and that none of these alterations was her signature or handwriting.  Pls.' Response 16-17.  The court finds that this alleged alteration is of no consequence to the signing of the affidavit, as the documents were still signed by Mrs. Puig, despite any alleged additional alteration.   Plaintiffs also assert that WaMu "misrepresented its authority under the Note, including its authority in purporting to assign Plaintiffs' loan to Chase Home Finance LLC, in an effort to foreclose on Plaintiffs' home."  Pls.' First Am. Compl. ¶ 34.  The court determines that this alleged misrepresentation is of no moment as to whether WaMu complied with the constitutional provisions as set forth in Plaintiffs' affidavits.

Regarding the loan application, Defendant provided evidence that Mr. Puig stated in his deposition testimony that he does not know when the loan application was submitted.  Def.'s SJ Evid_00016; Def.'s SJ Evid_00050-52.   Plaintiffs produced evidence that Mr. Puig stated in his deposition testimony that he did not know whether twelve days had elapsed from the date he submitted his loan application and the closing date.  Pl.s.'s App. Exh. I at 127-28.  The court has reviewed Plaintiffs' two affidavits affirming that the proper notices were given and that the loan application was submitted prior to 12 days before the closing date.  The court has also reviewed Mr. Puig's uncertain testimony as to whether or not he signed and dated the Notice Concerning Extensions of Credit and when the loan application was submitted.  The court determines that Mr. Puig's tentative testimony fails to raise a genuine dispute of material fact that the required notices were not given at least 12 days prior to the loan closing or that the loan application was submitted less than 12 days prior to closing.   Accordingly, the court determines that the constitutional requirement of section 50(a)(6)(M)(i) was met; no genuine dispute of material fact exists as to this claim; and Defendant is entitled to judgment as a matter of law as to this claim.

**4. Waiting One Business Day After Plaintiffs Received a Copy of the Loan Application Before Closing**

Pursuant to section 50(a)(6)(M), a homestead is protected from forced sale by requiring the lender to wait one business day after the homeowners receive a copy of the loan application and a final itemized disclosure of fees and charges before a home equity loan can be closed. Specifically, the section states:

> Sec. 50. (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . . (6) an extension of credit that: . . . (M) is closed not before: (ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

Tex. Const. art. XVI, § 50(a)(6)(M)(ii).

Plaintiffs produced evidence, the deposition testimony of Mr. Puig, that Mr. Puig was not given a draft of the Settlement Statement or final itemized disclosure of fees at least one day before final closing. Pl.s.'s App. Exh. I at 130. Mr. Puig stated that the only Settlement Statement he ever received was the one he signed at closing. *Id.* Mr. Puig also stated that he never signed or reviewed the Settlement Statement prior to the closing date. *Id.* Defendant submitted evidence that Mr. Puig signed an affidavit acknowledging that the lender complied with the one business day requirement. Def.'s SJ Evid_00080. Plaintiffs have not provided any evidence of when they received a copy of their loan application.

The court determines that Plaintiffs' First Amended Original Complaint does not mention any failure to provide a copy of the Settlement Statement or final itemized disclosure at least one business day before closing. Defendant asserts that it was placed on notice of this alleged constitutional violation during the deposition of Mr. Puig on November 29, 2011. Def.'s SJ Evid_000116. Thus, Defendant was not possibly placed on notice of a defect triggering an

obligation to cure the alleged defect until November 29, 2011.   As discussed more fully below, Defendant's letter to Plaintiffs, dated December 9, 2011, offering to cure this final itemized disclosure defect was effective, and no constitutional violation occurred.

Further, the court determines that in light of Plaintiffs' affidavit affirming that the proper "one business day" procedure was followed, that Plaintiffs have failed to raise a genuine dispute of material fact that such procedures were not followed.  *See Sierra v. Ocwen Loan Servicing, LLC*, 2012 WL 527940, *3 (S.D. Tex. Feb. 16, 2012) (Although the plaintiffs stated that their dated signatures on the Settlement Statement forms "appear[ed] to be genuine," they denied signing those forms prior to the closing date.   The court determined that since the plaintiffs signed two separate affidavits verifying that they received the itemized disclosure of closing costs at least one business day prior to closing, the timing of the loan closing was proper.) Accordingly, the court determines that the constitutional requirement of section § 50(a)(6)(M)(ii) was met; no genuine dispute of material fact exists as to this claim; and Defendant is entitled to judgment as a matter of law as to this claim.

### 5.  Curing the Constitutional Violations

Defendant provided evidence that it sent two letters to Plaintiffs on November 16, 2011, and December 9, 2011, offering to cure alleged constitutional violations.   Def.'s SJ Evid_000111; Def.'s SJ Evid_000116.  Plaintiffs assert that Defendant has failed to establish that it is the actual lawful owner and holder of Plaintiffs' loan, and therefore lacks any standing or authority to make any such cure offer.  The court has previously determined that Defendant has established its ownership of Plaintiffs' loan; thus, Plaintiffs' argument that Defendant lacks standing to make a cure offer is without merit.  Plaintiffs also argue that, assuming Defendant does have standing to exercise the cure provision set forth in the Texas Constitution, it cannot be

exercised because there are allegations of actual fraud on the part of the original lender at closing that render the cure provision ineffective. The court addresses the fraud allegations more fully below; however, it determines that the allegations of fraud have no bearing on Defendant's attempt to cure the alleged constitutional defects.

To be valid, a home-equity lien loan must comply with the numerous requirements set forth at section 50(a)(6)(A)-(Q). Of particular relevance here is section 50(a)(6)(Q)(x), the forfeiture and cure provision, which provides that:

> the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply.

Tex. Const. art. XVI, § 50(a)(6)(Q)(x). "If [the home-equity loan] requirements are not met, the lien against the homestead is not valid and the loan is treated as unsecured as to the homestead property." *Adams v. Ameriquest Mortg. Co. (In re Adams)*, 307 B.R. 549, 553 (Bankr. N.D. Tex. 2004) (citing *Doody v. Ameriquest*, 49 S.W.3d 342, 345-46 (Tex. 2001)). "Under this forfeiture provision, a lender's failure to comply results in the lender having to not only forfeit the right to collect any future payments called for under the note, but also having to disgorge any amount already paid under the note." *In re Adams*, 307 B.R. at 553 (citations omitted).

Section 50(a)(6)(Q)(x) of the Texas Constitution "is a cure provision that applies to all of section 50(a) and is not limited to protecting the loan's principal and interest. Rather, this provision also operates as a cure provision that validates a lien securing a section 50(a)(6) extension of credit." *Doody*, 49 S.W.3d at 345-46. "Specifically, through section 50(a)(6)(Q)(x)'s cure provision, the [1997 home-equity loan] amendment provides a means for

the lender to correct mistakes within a reasonable time in order to validate a lien securing a section 50(a)(6) extension of credit." *Id*. at 346.

As a result of amendment in 2003, "section 50 allows the lender to cure many of these defects unilaterally." *In re Adams*, 307 B.R. at 559 (citing Tex. Const. art. XVI, § 50(a)(6)(Q)(x)). "It also contains a general 'catch-all' provision that allows the lender to cure any other defect by refunding or crediting the borrower $ 1,000 and granting the borrower a right to refinance the balance of the loan with proper modifications." *Id.* The "catchall" provision allows the lender to cure in the following manner:

> (f) if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section . . .

Tex. Const. art. XVI, § 50(a)(6)(Q)(x)(f).

Defendant contends that it has not violated any provision of the Texas Constitution, and the court has already disposed of the constitutional violations alleged in Plaintiffs' First Amended Original Complaint: (1) Edith Puig did not sign the closing documents (¶¶ 16, 36(a)); (2) there was no three-day waiting period to fund the loan (¶ 36(b)); (3) the loan was closed less than twelve calendar days after Plaintiffs' loan application was received (¶ 36(c)); and (4) the loan was closed less than one business day after Plaintiffs' loan application was received (¶ 36(c)). Defendant contends, in the alternative, that it cured any alleged defect by sending letters to Plaintiffs dated November 16, 2011, and December 9, 2011, wherein it tendered Plaintiffs $1000 and offered them the right to refinance the extension of credit for the remaining term of the loan at no cost and on the same terms. Def.'s SJ Evid_000111; Def.'s SJ Evid_000116.

Although the court has disposed of the four constitutional violations alleged in Plaintiffs' First Amended Original Complaint, the court discusses the issues of notice and cure with respect to these alleged constitutional violations to provide clarity in its discussion of the notice and cure of constitutional violations alleged after Plaintiffs filed their First Amended Original Complaint.

Defendant contends that Plaintiffs never gave WaMu or Citibank the required notice of failure to comply with the Texas Constitution. The Puigs maintain that they satisfied the notice requirement on March 9, 2011, when they filed and served upon Defendant their First Amended Original Complaint, which they state adequately placed the Defendant on notice of the constitutional violations. Defendant submitted evidence that Deed of Trust specifies, in accordance with section 153.93 of the Title 7 of the Texas Administrative Code, that notice of any noncompliance must be given in writing by first class mail to the Lender's address as stated therein. Section 153.93(f) states, however, "[i]f the borrower opts for a location or method of delivery other than set out in subsection (e), the borrower has the burden of proving that the location and method of delivery were reasonably calculated to put the lender or holder on notice of the default." The court believes Plaintiffs have met this burden by filing and serving their First Amended Original Complaint.

A borrower provides the requisite notice of the lender's failure to comply with the requirements of section 50(a)(6) "by taking reasonable steps to notify the lender or holder of the alleged failure to comply. The notice must include a reasonable identification of the borrower and the loan as well as a description of the failure to comply." *In re Chambers*, 419 B.R. at 670 (citing 7 Tex. Admin. Code § 153.91 (effective November 11, 2004)); *see also Curry v. Bank of America*, N.A., 232 S.W.3d 345, 354 (Tex. App.—Dallas 2007, no pet.) (looking to § 153.91 as instructive and holding a letter that lacked factual details was inadequate notice of an alleged

violation of § 50(a)(6)).   Plaintiffs' First Amended Original Complaint, filed and served on March 9, 2011, meets these requirements.   The court believes Plaintiffs' filing and service of the First Amended Original Complaint was reasonably calculated to put Defendant on notice of the constitutional violations therein alleged.   Accordingly, the court determines that Defendant's attempted cure was ineffective as to these constitutional defects alleged in Plaintiffs' First Amended Original Complaint, as the cure letters were not sent within sixty days of Plaintiffs' service of its First Amended Original Complaint.   The court, however, has disposed of these alleged violations on other grounds.

Plaintiffs alleged other constitutional defects after service of its First Amended Original Complaint in Mr. Puig's deposition (November 29, 2011); in its surreply to Defendant's Motion for Summary Judgment, filed February 20, 2012; and in Plaintiffs' Second Amended Complaint, filed February 28, 2012.   "To determine how to cure its non-compliance, the lender must be aware of what that non-compliance is."   *Curry v. Bank of Am., N.A.*, 232 S.W.3d at 353. Defendant was not properly notified of these additional constitutional defects in Plaintiffs' First Amended Original Complaint.   These additional defects include such violations as Defendants alleged failure to provide Plaintiffs with a copy of all documents signed at the closing of the loan and Defendants alleged failure to provide Plaintiffs a final itemized disclosure of fees and charges.   The court finds that Defendant's cure letters, dated November 16, 2011, and December 9, 2011, properly cured these additional alleged constitutional violations as the letters were sent within sixty days of Plaintiffs' earliest complaint of noncompliance—Mr. Puig's deposition (November 29, 2011).   The court finds that with respect to these additional alleged constitutional defects, just as Defendant was fully apprised of the defective nature of its loan upon service of Plaintiffs' First Amended Original Complaint, Plaintiffs were fully apprised of Citibank's desire

and offer to cure upon service of the cure letters. Accordingly, the court determines that Citibank met its burden under section 50(a)(6)(q)(x), by its reasonable offer to cure, with respect to these additional alleged constitutional violations; no genuine dispute of material fact exists as to these additional alleged constitutional violations; and Defendant is entitled to judgment as a matter of law as to these claims.

### C. Plaintiffs' Fraud Claims

Plaintiffs assert fraud and misrepresentation claims against Defendant. Plaintiffs, however, have not demonstrated how this fraud is attributable to Citibank. The alleged misrepresentations were not made by Citibank. Plaintiffs' fraud and misrepresentation claims are premised on WaMu's conduct in connection with the loan origination. Defendant argues that it cannot be held responsible for such alleged fraud. The court agrees. An assignee of a loan cannot be held liable for representations allegedly made before it acquired the loan. *See Gonzales v. American Title Co*., 104 S.W.3d 588, 594 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

In *Gonzales*, Appellants, Carlos Gonzales and Janet R. Jones (the "borrowers"), filed suit seeking an injunction to prevent foreclosure on their home and for damages against Resource Bancshares Mortgage Group ("RBMG"), Woodforest Bancshares, Inc. (Woodforest) and American Title Company of Houston ("American Title"). The borrowers sought a loan to build a home and told the initial lender, Woodforest, they could not afford more than $1,500 per month in loan payments. An interim construction loan was executed and followed by a later permanent loan. Thereafter, the initial lender transferred the note to another lender, RBMG, which caused the monthly payment to rise above $1,500 per month. After the borrowers refused to pay the increased amount and foreclosure was threatened, they unsuccessfully sought an injunction. On

appeal, they argued there was sufficient evidence raised as to the lenders' misrepresentation, fraud, fraud in the inducement, conspiracy, and deceptive trade practices.

The court reasoned that "[t]o raise a fact issue on their claims of fraud or fraud in the inducement of the contract, the borrowers had to offer evidence that RBMG, or its agent, made a material, false promise to the borrowers and failed to fulfill that promise, to the borrowers' detriment." *Gonzales*, 104 S.W.3d at 594. The court explained:

> It is uncontested that RBMG made no promises or false representations to the borrowers to induce them to enter into the loan contract, and we have held that Woodforest, which the borrowers' allege made false representations to the borrowers, was not an agent of RBMG. Accordingly, the borrowers produced no evidence that RBMG perpetrated a fraud on the borrowers.

*Id.* To raise a fact issue on its fraud claim, the Puigs had to provide evidence that Citibank, or its agent, made a material, false promise to them and failed to fulfill that promise, to their detriment. *Gonzales*, 104 S.W.3d at 594; *Residencial Santa Rita, Inc. v. Colonia Santa Rita, Inc.*, 2007 WL 2608564 (Tex. App.—San Antonio, Sept. 12, 2007) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)). Plaintiffs have not provided any evidence that demonstrates that Citbank made a false promise or representation or that WaMu's alleged fraud can be attributed to Citibank.

Plaintiffs have also reasserted their claims for alleged constitutional violations as fraud claims. As discussed above, those constitutional claims fail as a matter of law. Plaintiffs' fraud claims are also premised on alleged misrepresentation regarding Citibank's authority to enforce the Deed of Trust and foreclose. The court has previously established that no genuine disputes of material fact exist as to whether Citibank is the assignee of the Note and is thus entitled to foreclose. Accordingly, this theory must also fail. For the foregoing reasons, the court

determines that no genuine dispute of material fact exists as to this claim; and Defendant is entitled to judgment as a matter of law as to this claim.

### D.  Plaintiffs' Claim for Permanent Injunction

Plaintiffs request that the court "enter a temporary or permanent injunction preventing Defendant and/or its alleged servicing agent Chase, and all of its employees, agents, attorneys, and trustees, from foreclosing on Plaintiffs' homestead Property . . ."  Pls.' Second Am. Compl. ¶ 10.1.1.    Plaintiffs, however, are not entitled to injunctive relief, as the court has dismissed each of their claims as a matter of law.  Under Texas Law, a request for injunctive relief, absent a substantive cause of action supporting entry of judgment is fatally defective and does not state a claim.  *Ramming v. JPMorgan Chase Bank, N.A.*, 2012 WL 1122791 (S.D. Tex. Apr. 3, 2012) (citing *Buntaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002)); *Owens v. Bank of Am.*, *NA,* 2012 WL 912721 (S.D. Tex. Mar. 16, 2012).  "As stated by the Supreme Court, 'the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.'"  *Cruz v. OneWest Bank, FSB*, 2012 WL 1684622 (N.D. Tex. May 15, 2012) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).   The undisputed evidence establishes that Citibank was the owner of the Note and Deed of Trust.  Further, the court has determined that Plaintiffs' alleged constitutional violations and claims of fraud must fail. Therefore, Plaintiffs are not entitled to injunctive relief.

### IV.    Conclusion

For the reasons herein stated, the court **concludes** that Plaintiffs have failed to raise a genuine dispute of material fact that Defendant violated the Texas Constitution with respect to its Note and Deed of Trust or failed to cure any alleged violations; lack standing to enforce the Deed of Trust; or committed fraud or made any misrepresentation.  Accordingly, Citibank is

entitled to judgment as a matter of law as to all of Plaintiffs' claims, and the court **grants** Defendant's Motion for Summary Judgment.   Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court will issue judgment by separate document.

       **It is so ordered** this 21st day of May, 2012.


                                    Sam A. Lindsay
                                    United States District Judge